**Reversed and Remanded and Majority and Concurring Opinions filed April 1, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-12-00580-CV

### ALPHAVILLE VENTURES, INC. AND NOAM BIZMAN, Appellants

### V.

### FIRST BANK, Appellee

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2011-16429**

## C O N C U R R I N G   O P I N I O N

"*It's the little details that are vital. Little things make big things happen.*"

COACH JOHN WOODEN

Vital details are missing from the summary-judgment record in today's case. As a result, the summary-judgment evidence does not conclusively prove that First Bank is the assignee of the promissory note and guaranty on which it seeks to recover. Because the trial court erred in granting summary judgment, it is proper to reverse the judgment and remand.

Small Business Loan Source, LLC (hereinafter, "Loan Source") was the payee and original owner and holder of the promissory note (hereinafter, "Note") and guaranty (hereinafter, "Guaranty"). For First Bank to be entitled to summary judgment on its claims under these instruments against Alphaville Ventures, Inc. and Noah Bizman (collectively, the "Alphaville Parties"), the summary-judgment evidence must conclusively prove that First Bank is the assignee of the Note and Guaranty.[1] In our de novo review of the trial court's traditional summary judgment, we are to consider all the evidence in the light most favorable to the Alphaville Parties, crediting evidence favorable to them if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[2] Under this familiar standard, the evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence.[3]

The record does not contain the proof necessary for the Alphaville Parties to prevail. The statements of Wayne Ballenger in his affidavit, the statements of First Bank's counsel in his affidavit, Alphaville Ventures, Inc.'s answers to First Bank's requests for admissions, the testimony of Bizman in the excerpts of his deposition, and the documents attached to First Bank's petition do not conclusively prove that First Bank is the assignee of the Note or of the Guaranty. The items attached to Ballenger's affidavit are the only other timely filed summary-judgment evidence. These fourteen pages are a confusing amalgamation of documents and schedules

---

[1] *See McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 324 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

[2] *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

[3] *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

that, under the summary-judgment standard of review, do not conclusively prove that First Bank is the assignee of the Note or of the Guaranty.

In Ballenger's affidavit, the only document Ballenger says is attached to the affidavit is the Loan Purchase and Sale Agreement dated September 21, 2009 (hereinafter, "Purchase Agreement"). Ballenger does not address whether other documents are attached to his affidavit or delineate which of the attached pages are the Purchase Agreement, for example, by attaching that document as a specified exhibit to his affidavit. The first page attached to this affidavit has signatures at the bottom and appears to contain all of the terms and conditions of the Purchase Agreement. On that page, Loan Source and First Bank agree that

> [Loan Source] will convey the Assets to [First Bank] by executing and delivering to [First Bank] (i) endorsements without recourse conveying to [First Bank] [Loan Source's] right, title and interest in the loans listed on Schedule A hereto (the "Loans"), and (ii) a Bill of Sale in the form attached hereto as Exhibit A, transferring [Loan Source's] interest in the personal property listed on Schedule B hereto. . . .

First Bank also agrees to execute and deliver an Assignment and Assumption of Liabilities Agreement in the form attached to the Purchase Agreement as Exhibit B. Significantly, in the Purchase Agreement, Loan Source does not assign, transfer, or convey the Note or the Guaranty to First Bank; rather, at most, Loan Source agrees to convey the Note and the Guaranty by endorsement to First Bank without recourse and by executing and delivering a Bill of Sale in the form attached thereto as Exhibit A. There is no reasonable construction of the Purchase Agreement under which that instrument shows that First Bank is the assignee of either the Note or the Guaranty. In addition, as noted by the majority, the summary-judgment evidence does not contain any evidence that Loan Source endorsed the Note or the Guaranty to First Bank.

3

The second page attached to Ballenger's affidavit contains representations and warranties made by First Bank to the Small Business Administration in connection with the Purchase Agreement. These representations do not prove that First Bank is the assignee of the Note or of the Guaranty, either.

The third page attached to Ballenger's affidavit is a document entitled "Bill of Sale," dated September 30, 2009, and signed by Loan Source and First Bank. This page is not labeled Exhibit A, and the summary-judgment evidence does not contain either an Exhibit A or an Exhibit B to the Purchase Agreement. This Bill of Sale recites that Loan Source sold to First Bank "the Assets set forth on Schedule B attached hereto." The Bill of Sale does not refer to any Schedule A or any other attachment to the Bill of Sale.

The fourth and fifth pages attached to Ballenger's affidavit are entitled "Schedule A" and may be Schedule A of the Purchase Agreement, but this detail is not specified. Even if these pages are Schedule A of the Purchase Agreement and even if the Note is listed on this schedule, neither this schedule nor the reference to this schedule in the Purchase Agreement shows that Loan Source endorsed the Note or the Guaranty to First Bank or that Loan Source transferred or otherwise assigned the Note or the Guaranty to First Bank.

The sixth page attached to Ballenger's affidavit contains only two lines of text: "SCHEDULE B," and then below that line: "Assets Conveyed to First Bank." This page contains no reference to the Note, the Guaranty, or the loan in question. If this page is Schedule B of the Purchase Agreement, neither this schedule nor the reference to this schedule in the Purchase Agreement shows that Loan Source endorsed the Note or the Guaranty to First Bank or that Loan Source transferred or otherwise assigned the Note or the Guaranty to First Bank.

The seventh page attached to Ballenger's affidavit is entitled "Attachment I

4

(Referenced in SBA Letter to First Bank dated 9/30/2009)." Underneath this title, there appears to be a heavily redacted list, with a reference only to part of a Small Business Administration Loan Number for a loan to a borrower named "Arby's." Even if this reference is to the loan pursuant to which the Note was executed, there is no reference in the Purchase Agreement or the Bill of Sale to any "Attachment I." Under the applicable standard of review, reasonable and fair-minded jurors could find either that the seventh page is part of Schedule B of the Purchase Agreement or that this page is part of neither Schedule B to the Purchase Agreement nor Schedule B to the Bill of Sale. In either event, the documents attached to Ballenger's affidavit would not show that Loan Source endorsed the Note or the Guaranty to First Bank or that Loan Source transferred or otherwise assigned the Note or the Guaranty to First Bank. This court may presume for the sake of argument that, if the seventh page is part of Schedule B to the Bill of Sale, then the summary-judgment evidence would show that Loan Source transferred or otherwise assigned the Note and the Guaranty to First Bank. But, even under this presumption, the summary-judgment evidence would raise a genuine fact issue precluding summary judgment, given that reasonable and fair-minded jurors also could find that the seventh page is part of Schedule B of the Purchase Agreement or that this page is part of neither Schedule B to the Purchase Agreement nor Schedule B to the Bill of Sale.[4]

The remaining pages attached to Ballenger's affidavit do not show that Loan Source endorsed the Note or the Guaranty to First Bank or that Loan Source transferred or otherwise assigned the Note or the Guaranty to First Bank.

Considering all timely filed summary-judgment evidence under the

---

[4] *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *Mack Trucks, Inc.*, 206 S.W.3d at 582; *Martinez v. Donisi*, No. 14-08-00166-CV, 2009 WL 2356631, at *2–4 (Tex. App.—Houston [14th Dist.] Jul. 30, 2009, no pet.) (mem. op.).

applicable standard of review, the summary-judgment evidence does not conclusively prove that First Bank is the assignee of the Note or of the Guaranty.[5]

Because this court may reverse the trial court's judgment and remand for further proceedings under the above analysis, this court need not address the proper construction and meaning of the term "Assets," as used in the Purchase Agreement and the Bill of Sale or whether both endorsement of the "loan" and execution and delivery of the Bill of Sale are required for First Bank to be the assignee of the Note or of the Guaranty.[6] Though I do not join the majority opinion, I respectfully concur in the court's judgment.


/s/      Kem Thompson Frost
          Chief Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Donovan, J., majority).

---

[5] *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *Mack Trucks, Inc.*, 206 S.W.3d at 582; *Martinez*, 2009 WL 2356631, at *2–4.

[6] *See ante* at pp. 13–14. In addition, the majority states that this court uses the summary-judgment standard of review to construe the meaning of the term "Assets" in the Purchase Agreement and the Bill of Sale. *See ante* at pp. 14. This statement is incorrect because, if a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes the contract as a matter of law, even if the unambiguous meaning yields a result that favors the movant for summary judgment. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157–62 (Tex. 2003). If the meaning of a contract is uncertain and doubtful or is reasonably susceptible to more than one interpretation, then the contract is ambiguous, and summary judgment may not be rendered as to the interpretation of the contract. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Nonetheless, the analysis as to whether the contract is ambiguous is based on the Texas legal principles regarding ambiguity, not on the summary-judgment standard of review. *See Schaefer*, 124 S.W.3d at 157–62.

6